

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00217-CV

———————————————

EAN HOLDINGS, LLC, Appellant

V.

GUILLERMO ARCE, Appellee

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-291839-17

Dissenting Opinion by Justice Walker

## DISSENTING OPINION

Jury verdicts are sacrosanct. They are challengeable under certain narrow procedural vehicles, but appellate courts are to tread lightly when marching through the applicable standards of review. After all, a jury sees and hears things that inform its credibility determinations that we as appellate jurists cannot replicate. This case admittedly presents a close call, and the majority ably navigates the busy intersection between our deference to the fact-finder and the requirements of supportive evidence. However, I believe that when faced with a close call that a jury has resolved, our required deference to its determinations must tip the legal-sufficiency scale in favor of the jury's finding.

A legal-sufficiency review is based on a review of the jury charge in light of the entire record. *Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018); *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). If the evidence admitted at trial would enable reasonable and fair people to differ in their conclusions, a jury is authorized to choose which conclusion to credit. *Durant*, 550 S.W.3d at 616. Importantly for purposes of this case, we view the evidence in the light most favorable to the verdict, and we cannot substitute our judgment for the jury's. *Id.* But if the evidence allows only one inference, neither the jury nor this court may disregard that inference and find the opposite. *City of Keller*, 168 S.W.3d at 822; *see* 4 Roy W. McDonald & Elaine A. Grafton Carlson, *Texas Civil Practice* § 21:60 (2d ed. 2001). Here, the majority concludes that the evidence allows only one inference: Anthony Nelson was not in

the course and scope of his employment for appellant EAN Holdings, LLC when he hit appellee Guillermo Arce's car. Accordingly, the majority holds that this inference cannot be disregarded, rendering the jury's opposite finding supported by legally insufficient evidence. I respectfully disagree.

Nelson's testimony was inconsistent on several points. First, he could not nail down the time of the accident.[1] Nelson's branch's weekday hours were 7:30 a.m. to 6:00 p.m.[2] In his recorded statement shortly after the accident, Nelson represented that the accident occurred at "roughly 5:25 p.m." At trial, he testified that the accident was at 6:30 p.m. In support, he produced a picture of the wreck that he had taken that had a time stamp of 6:23 p.m.[3] And Nelson never put the accident time on his written accident report to EAN because he "had to follow up with [his supervisor] to find out what time [he] should actually place on there, so [he] left it blank." Arce testified that the accident occurred at 6:00 p.m.

Second, Nelson gave diametrically opposed testimony on how he would pay for a car wash or for gas for the EAN owned car he was allowed to drive. At trial, Nelson testified that when he drove an EAN car, he would personally pay for a wash

---

[1]Although the majority states that the time of the accident is not material to the course-and-scope inquiry, Nelson's inconsistent testimony on the issue is directly relevant to his credibility and reliability, which the jury was entitled to assay.

[2]The accident occurred on September 29, 2015, which was a Tuesday.

[3]Arce noted in the jury's presence that EAN had not disclosed the picture before trial.

or gas "at [his] expense" on his way to work the next morning. But at his deposition, Nelson had stated that EAN would reimburse him for those expenses. When confronted with this at trial, Nelson recognized the "discrepancy" but asserted that because he serviced the car on his way to work, it was not during work hours and, thus, was on his own dime. Nelson had never corrected his deposition testimony even though he was given an opportunity to do so because "[a]t the time, I believed it was correct."

Third, Nelson's admitted work duties after he left his branch seemed to change depending on the import of his answer. He recognized that being allowed to drive an EAN car helped him perform his job duties and that he represented EAN while driving its cars. Nelson stated that he would take the last car in when he left his branch and would clean it and get gas on his way in to work the next morning. Nelson's supervisor, Glen Van Blarcum, testified however that it was "not typical policy or procedure" to fill up the gas tank or to wash the borrowed car before returning it to the fleet the next day. Even so, Nelson stated that preparing the cars for the next day's rentals was part of his job duties. Before Nelson was promoted to branch manager, he did not take work home with him. But after he became branch manager, he was required to "set up fleet" when he got home with the area manager and all the other branch managers in the area after he left his branch. The fleet usually was finalized by approximately 7:30 or 8:00 p.m. Nelson was not "done for the day" until he had confirmed that a sufficient fleet was available in the area for the

next day.  But he and Van Blarcum testified that Nelson had no required duties once he left the branch.  Nelson stated that his fleet duties occurred "[a]lmost every night"; however, he and Van Blarcum denied that he did so the night of the accident.

The Texas Supreme Court has held that a jury may disregard all or part of a witness's testimony based on the witness's "manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicating that the evidence is not reliable."  *Hous., E. & W. T. Ry. Co. v. Runnels*, 47 S.W. 971, 972 (Tex. 1898); *see also Anderson*, 550 S.W.3d at 616–17 (recognizing jury could believe portions of an interested witness's testimony, reconcile any conflicts, and disregard portions it did not believe).  Nelson and Van Blarcum were interested witnesses, *see* McDonald & Carlson, *supra* § 21:60 n.1, and contradicting testimony about Nelson's actual duties after he left the branch office that day would be difficult or impossible to obtain.  In other words, their testimonies regarding course and scope were solely within their knowledge and not subject to ready contradiction.  Therefore, the jury was authorized to find against Nelson's and Van Blarcum's assertions if a reasonable inference could be drawn from the surrounding circumstances sufficient to cast doubt on the testimony.  *See id.* § 21:60.

In this case, the jury could have determined, based on their credibility and reliability determinations, that Nelson was in the course and scope of his employment when he hit Arce.  As the branch manager, Nelson testified that his duties did not necessarily stop when he left the office as they had when he had been an assistant

5

manager. Indeed, it was Nelson's common practice to contact the other area branch managers and Van Blarcum after his branch closed, many times after he had arrived at home, to make sure sufficient cars were available for the next day. The jury heard that EAN controlled the manner in which Nelson operated the borrowed car and, in fact, Nelson's first call after the accident was to Van Blarcum. The jury charge defined an employee acting in the "scope of his employment" as one who "is acting in the furtherance of the business of his employer."[4] The reasonable inferences arising from the direct and circumstantial evidence were legally sufficient for the jury to find that Nelson was in the course and scope of his employment based on this charge definition and based on the course-and-scope legal authorities discussed by the majority.

Because the majority concludes otherwise, I respectfully dissent. I express no opinion on the factual sufficiency of the evidence regarding course and scope, which EAN also challenges.

/s/ Brian Walker
Brian Walker
Justice

Delivered: October 14, 2021

---

[4]Although EAN objected to the course-and-scope question, it submitted this exact language for the included definition; EAN, however, wanted an additional definition explaining what course and scope was not. The trial court denied this requested, additional definition.